Filed 3/8/22  P. v. Earl CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B313115 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA136291) |
| v. | |
| KEVONE EARL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Restitution order reversed with directions.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Peggy Z. Huang, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

In 2016 a jury convicted Kevone Earl of multiple crimes, and the trial court sentenced him to life in prison. He appealed, and we reversed with directions for a new trial. (*People v. Dixon et al.* (Apr. 10, 2019, B277759) [nonpub. opn.].)

On remand, the People made Earl a plea offer that, in exchange for Earl pleading guilty or no contest to voluntary manslaughter and admitting he used a firearm in the commission of the crime, the court would sentence Earl to a prison term of 25 years. In explaining the terms of the proposed agreement, the trial court told Earl he would have to pay victim restitution in the amount of $5,000. Earl objected and asked for a restitution hearing. The court said it would impose the restitution amount and have a hearing "afterwards." Earl pleaded no contest, and the court accepted his plea. The court sentenced Earl, ordered him to pay a $300 restitution fine and $5,000 in victim restitution, gave him an opportunity to be heard on his ability to pay, and ordered him to pay both amounts.

Earl argues the trial court erred because "there was no evidence before the court" to support an order requiring him to pay $5,000 in restitution. Earl also argues that the trial court denied him a fair hearing on his ability to pay the $300 restitution fine and, for the first time in his reply brief, that the trial court should have an opportunity to exercise its discretion whether to strike Earl's prior serious or violent felony conviction for purposes of sentencing under the three strikes law.

We agree with Earl's contention the trial court erred in ordering him to pay $5,000 in victim restitution. We conclude, however, Earl's other arguments are forfeited, meritless, or both.

2

Therefore, we reverse the order requiring Earl to pay $5,000 in victim restitution and direct the court to hold a restitution hearing under Penal Code section 1202.4, subdivision (f).[1] Otherwise, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *A Jury Convicts Earl, and the Trial Court Sentences Him*

In 2014 Earl and two codefendants drove to the home of a rival gang member and fired 20 shots at the house, killing one person and injuring another. In 2016 a jury found Earl guilty on one count of second degree murder (§ 187, subd. (a)), three counts of attempted murder (§§ 187, subd. (a), 664), and one count of shooting at an inhabited dwelling (§ 246). The jury found true allegations that Earl committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)) and that he personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b)-(d)). After Earl admitted he had a prior serious felony conviction, the court sentenced him to life in prison with a minimum parole eligibility of 210 years. The court imposed a $10,000 restitution fine under

---

[1]    Undesignated statutory references are to the Penal Code.

section 1202.4, subdivision (b), and set the matter for a restitution hearing.[2]

B.    *Earl Appeals, We Reverse, and the People Make an Offer*

Earl appealed.  He argued, among other things, the trial court erred in denying his motion under *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] and *People v. Wheeler* (1978) 22 Cal.3d 258.  We agreed with that contention, reversed the judgment, and directed the court to set the matter for a new trial.  In 2021 the People offered Earl a proposed disposition:  The People would dismiss the original charges and allegations, and Earl would plead guilty or no contest to an amended charge of voluntary manslaughter (§ 192, subd. (a)) and admit allegations that he personally used a firearm within the meaning of section 12022.5, subdivision (a), and that he had a prior serious or violent felony conviction within the meaning of

---

[2]    It is unclear from the record whether the court ever held the restitution hearing.  Nothing in the record indicates the trial court ordered Earl to pay victim restitution in 2016.  In a footnote in their respondent's brief, the People ask us to take judicial notice under Evidence Code section 452, subdivision (d), of the record in Earl's prior appeal.  But because the record in that appeal does not include a restitution order or any evidence there was a restitution hearing, we deny the request.

4

the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).[3]

### C. *The Trial Court Sentences Earl, Orders Him To Pay Victim Restitution and a Restitution Fine, and Holds an Ability-to-pay Hearing*

While stating the terms of the plea agreement, the trial court told Earl he would have to pay "restitution in the amount of $5,000 that would be joint and several liability" with a codefendant. Earl stated, "No, sir. Something about restitution, they're talking about $5,000 in restitution." The court said, "It's a restitution amount of $5,000 to the Victim Restitution Board." The following exchange ensued:

"Defendant Earl: I got paperwork, my appeal, something that restitution, we won't have to pay restitution due to the new law that changed.

"The Court: I think that is talking about something else.

"Defendant Earl: No. No, it's talking about this. . . . I got the paperwork in my cell. My appeal lawyer sent it to me. We can come back next week for sentencing. I can bring you the paper. Y'all supposed to take me to trial for restitution. Y'all can't make me pay nothing that y'all don't know I have the funds for.

"The Court: We can have a hearing about that right now.

---

[3] Prior to making this offer, the People moved under section 1385 to dismiss the firearm enhancement and "any strike prior." The court denied the request to dismiss the firearm enhancement, and the People withdrew their request the court strike the allegation Earl had a prior serious or violent felony conviction.

"Defendant Earl: We can.

"The Court: I can still order it and we can have a hearing afterwards. I understand what you're talking about. All right. And so again, Mr. Earl, that's what you wish to do today?

"Defendant Earl: Yeah, restitution hearing.

"The Court: Okay. No, the plea agreement that I've listed.

"Defendant Earl: Yes, sir."

The trial court advised Earl of his rights and some of the consequences of his plea, and again told him he had to "pay restitution to the victim in this matter in the amount of $5,000." The court also told Earl he had to pay "a restitution fine of anywhere from $300 to $10,000." The court continued to advise Earl on the remaining consequences of his plea. Earl pleaded no contest and admitted the firearm and prior conviction allegations. The court accepted Earl's plea after finding Earl had voluntarily, knowingly, and intelligently waived his rights. The court allowed the father of one of the victims to make a statement in opposition to the plea agreement.

The court sentenced Earl to the upper term of 11 years, doubled under the three strikes law, plus the lower term of three years for the firearm enhancement under section 12022.5, subdivision (a), for a total prison term of 25 years. The court imposed a restitution fine of $300 and ordered Earl "to pay $5,000 to the Victim Restitution Board, which will be collected joint and several liability and it will be plus 10 percent interest from today's date." The court asked Earl if he "wish[ed] to be heard in regards to [his] ability to pay."

Earl said his appellate attorney told him about "a new law" providing that, "once restitution is ordered, we have to have a hearing in order for [him] to pay this fund." He told the court

6

that he had "no way to pay that" and that he had been "in prison for three years already paying restitution."

The court ruled: "Based upon what I've heard, the court will still impose the $5,000 victim restitution fund. If there were funds that were paid previously towards this, that's something that needs to be discussed with the Department of Corrections [and Rehabilitation], but it would make sense that amount would still go towards the balance." Before concluding the hearing, the court asked if there was "anything further by either counsel." Neither Earl nor counsel for Earl responded. Earl did not mention, and the court did not rule on, his ability to pay the $300 restitution fine. Earl timely appealed.

## DISCUSSION

Earl argues the trial court erred in ordering him to pay victim restitution without hearing or considering evidence of "the loss suffered by any victim" or explaining how the court "obtained the $5,000 figure." He argues neither the People, the Victim Compensation Board, nor the victim's father made a claim for restitution at the hearing. The People argue the court properly ordered Earl to pay $5,000 in victim restitution because in 2016 Earl had "stipulated that he would pay $5,000 in direct victim restitution" for funeral expenses the Board had paid. The People contend the court "acted within its discretion" because "the trial court had access to its original file" and "was aware of the original request for reimbursement" by the Board in 2016. In his reply brief Earl argues that, even if the court had ordered him to pay victim restitution in 2016, this court's reversal of the prior judgment vacated any prior restitution order and that, as a

7

result, on remand the People had to prove the amount of any victim restitution. We agree with Earl that the trial court did not consider any evidence of, or otherwise explain how it calculated, the $5,000 in victim restitution.

> A.    *Applicable Law and Standard of Review*

"California law provides for two types of restitution: direct restitution to the victim (Pen. Code, § 1202.4, subd. (f)), which is based on a direct victim's loss, and a restitution fine (Pen. Code, § 1202.4, subd. (b)), which is not." (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1169.)[4] "'The purposes of the two kinds of restitution are different. The imposition of a restitution fine is punishment. [Citation.] The purpose of direct victim restitution, however, is to reimburse the victim for economic losses caused by the defendant's criminal conduct . . . .'" (*People v. Allen* (2019) 41 Cal.App.5th 312, 320-321.) The trial court ordered Earl to pay both.

Section 1202.4, subdivision (f), provides in relevant part, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Where "the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim . . . the amount of assistance provided shall be presumed to be a direct result of the

---

[4]    California law also recognizes restitution as a condition of probation. (See § 1203.1, subd. (b); *People v. Giordano* (2007) 42 Cal.4th 644, 651-652.)

defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A).)  The "amount of assistance provided by the Restitution Fund shall be established by copies of bills submitted to the California Victim Compensation Board reflecting the amount paid by the board and whether the services for which payment was made were for medical or dental expenses, funeral or burial expenses, mental health counseling, wage or support losses, or rehabilitation. Certified copies of these bills provided by the board and redacted to protect the privacy and safety of the victim or any legal privilege, together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board, shall be sufficient to meet this requirement." (*Id.*, subd. (f)(4)(B).)  If "the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court." (*Id.*, subd. (f).) Although a "defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution" (*id.*, subd. (f)(1)), a "defendant's inability to pay shall not be a consideration in determining the amount of a restitution order" (*id.*, subd. (g); see *People v. Navarro* (2021) 12 Cal.5th 285, 343-344; *People v. Nieves* (2021) 11 Cal.5th 404, 509).

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)  Once the victim makes a prima facie showing, the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, "'the amount of the loss is other than that claimed by

9

the victim.'" (*Ibid.*; see *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115; *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 373.) A party satisfies its burden by "provid[ing] an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.)

We review a victim restitution award for abuse of discretion. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305; *People v. Trout-Lacy*, *supra*, 43 Cal.App.5th at p. 373; *People v. Grundfor* (2019) 39 Cal.App.5th 22, 27.) "No abuse of discretion occurs if the restitution order is supported by a rational and factual basis." (*People v. Aguilar* (2016) 4 Cal.App.5th 857, 862; see *People v. Millard*, *supra*, 175 Cal.App.4th at p. 26 ["'"'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.'"'"].) "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 664.) "'In reviewing the sufficiency of the evidence [to support a factual finding], the "'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings."'" (*Millard*, at p. 26; see *Trout-Lacy*, at p. 373 [where "'the specific issue is whether the court's factual findings support restitution, we review those findings for substantial evidence'"]; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [testimony, written statements, and receipts may be substantial evidence of the amount of victim restitution].)

B.   *The Trial Court Erred in Ordering Earl To Pay $5,000 in Victim Restitution Without Any Factual Basis*

A victim of a crime has a constitutional right to restitution that "cannot be bargained away or limited." (*People v. Gross* (2015) 238 Cal.App.4th 1313, 1318; see *People v. Giordano, supra,* 42 Cal.4th at p. 652 ["'It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.'"]; see also Cal. Const., art. I, § 28, subd. (b)(13).)  But an order requiring a defendant to pay restitution to a victim must be factually supported, rationally calculated, and based on an "amount of loss claimed by the victim" or established by "any other showing to the court."  (§ 1202.4, subd. (f).)

The trial court told Earl he would have to pay restitution to the Board in the amount of $5,000.  Although the record is not entirely clear, Earl objected and asked for a restitution hearing because he believed the People were "supposed to take [him] to trial for restitution."  The court stated it would nonetheless order victim restitution and have a restitution hearing after accepting Earl's plea.  But at that hearing the People did not present, and the court did not consider, any evidence of expenses paid by the Board.  Rather than asking the parties to submit evidence on the amount of victim restitution, the court asked Earl a question about an issue that was both different and irrelevant: whether he wanted to be heard on his ability to pay the amount of victim restitution.  (See *People v. Navarro, supra,* 12 Cal.5th at pp. 343-344 [§ 1202.4, subd. (g), "preclude[s] the court from

11

considering the defendant's ability to pay in setting the amount of victim restitution"].)

The People did not offer, and the court did not cite, any evidentiary support for the $5,000 restitution award, leaving Earl unable to meaningfully exercise his right to "dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1).) While the court told Earl he had to pay $5,000 in victim restitution, no one suggested how that amount was calculated or what evidence supported it. Thus, the trial court abused its discretion in ordering Earl to pay $5,000 in victim restitution. (See *People v. Selivanov* (2016) 5 Cal.App.5th 726, 780 ["'""While it is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious."'""]; *People v. Jones* (2010) 187 Cal.App.4th 418, 427 ["the trial court abused its discretion by failing to make a clear statement of the calculation method it used in ordering restitution"]; *People v. Petronella* (2013) 218 Cal.App.4th 945, 973 [because "the court clearly abused its discretion by not 'employ[ing] a method that is rationally designed to determine the . . . victim's economic loss,'" the "victim restitution order must be reversed and the matter remanded for a new hearing"].)

The People suggest the trial court was aware of a prior $5,000 victim restitution order, the Board's claim for reimbursement, or Earl's 2016 stipulation to pay that amount. The court, however, made no mention of any of these things. (See *People v. Giordano*, *supra*, 42 Cal.4th at p. 664 ["a trial court must demonstrate a rational basis for its award, and ensure that the record is sufficient to permit meaningful review"].) Earl

12

speculates the court may have "looked at" its 2016 orders "and adopted the $10,000 restitution fine as the amount to be paid [and] divided it between the defendants." But speculation is not substantial evidence (*In re Ramirez* (2019) 32 Cal.App.5th 384, 405), particularly where the speculation is not rationally related to the court's conclusion. One-half the amount of a previously imposed (and reversed) restitution fine—which, as discussed, serves an entirely different purpose from an award of victim restitution—is not evidence of an economic loss or expense incurred. (See *People v. Jones, supra,* 187 Cal.App.4th at p. 424 [although "we do not know the calculation method the trial court actually used," it is "problematic to assume the court used [a particular] calculation" where "there appears to be no logical reason for" it].)

Moreover, section 1202.4, subdivision (f), allows the trial court, when the amount of restitution cannot be ascertained at the time of sentencing, to determine the amount at a future hearing. (See *People v. Petronella*, *supra*, 218 Cal.App.4th at p. 970 [the "court could have imposed sentence on defendant and continued the restitution hearing if it felt additional evidence was needed to determine the amount"].) Allowing the court to set the restitution hearing at a later date helps ensure the restitution award is "sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) Here, despite the lack of evidence to support any amount of restitution, the trial court did not find the amount of restitution could not be ascertained or set the restitution hearing for a future date.

C.     *Earl Was Not Entitled to a Hearing on His Ability To Pay the $300 Restitution Fine, Which in Any Event He Forfeited*

Earl also argues the "sentencing court did not provide a fair hearing . . . regarding his ability to pay a Restitution Fine. The court had already decided on the sentence which included the $5,000 figure for restitution. The court was not going to then give [him] any opportunity to lessen his financial burdens." Earl, however, was not entitled to a hearing on his ability to pay the $300 restitution fine.

Section 1202.4, subdivision (b), provides, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." (§ 1202.4, subd. (b)(1).)

Where the trial court imposes a restitution fine above the statutory minimum, the court must consider the defendant's ability to pay. (§ 1202.4, subd. (d); see *People v. Ramirez* (2021) 10 Cal.5th 983, 1041 ["in setting the amount of a restitution fine, the trial court . . . must consider a host of factors—including a defendant's ability to pay—if it sets the fine above the minimum"]; *People v. Miracle* (2018) 6 Cal.5th 318, 356 [same].) Here, because the court ordered Earl to pay the statutory minimum fine of $300, he was not entitled to a hearing on his ability to pay. And, in any event, neither Earl nor his attorney objected to the restitution fine in the trial court. After the court

14

held the hearing (to which Earl was not entitled) on Earl's ability to pay victim restitution, the court asked if counsel had any other issues to raise. Neither Earl nor his attorney asked for a hearing on his ability to pay the restitution fine. (See *Miracle*, at p. 356 [because the "defendant did not object to the fine at his sentencing hearing, he has forfeited his challenge"]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [defendant "forfeited any ability-to-pay argument regarding the restitution fine by failing to object"].)

> D. *Earl Forfeited His Meritless Argument We Should Direct the Trial Court To Exercise Its Discretion Whether To Strike His Prior Serious or Violent Felony Conviction*

For the first time in his reply brief, Earl asks us to remand "to permit [him] the benefit of a change in the three strikes law," which "was intended to be applied retroactively," and to give the trial court the opportunity to exercise its discretion whether to strike his prior serious or violent felony conviction. Earl argues that, before his "sentencing pursuant to a plea bargain reached following the reversal of the first trial verdict, the Legislature amended the Three Strikes Law, permitting an opportunity to move to strike the prior strike convictions. (Senate Bill No. 1393, allowing a trial court to dismiss a serious felony enhancement in furtherance of justice (See Stats. 2018, ch. 1013, sec. 1 and 2.) (effective Jan. 1, 2019.)." Earl explains that his trial counsel "made no effort to request the [court] to exercise its discretion" and that therefore he "agreed to a doubled sentence as a second

15

striker." This argument is doubly forfeited and fundamentally wrong.

First, Earl did not make this argument in his opening brief, thus forfeiting it on appeal. (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1218-1219 ["'[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party'"]; *People v. Gonzalez* (2020) 57 Cal.App.5th 960, 978 [it is "well established that arguments may not ordinarily be raised on appeal for the first time in a reply brief"].) Second, Earl forfeited the argument in the trial court. As he concedes, neither he nor his attorney "made [any] effort to request" the trial court "to exercise its discretion and strike the strike convictions."[5]

In any event, the law Earl cites, Senate Bill No. 1393 (Stats. 2018, ch. 1013, §§ 1 & 2), effective January 1, 2019, amended sections 667 and 1385 to "delete language prohibiting a judge from striking a prior serious felony conviction for purposes of eliminating a five-year sentence enhancement" and to give the court the "discretion to strike a prior serious felony in the interest of justice." (*People v. Pride* (2019) 31 Cal.App.5th 133, 142.) That law applies to striking serious felony convictions for purposes of the five-year enhancement under section 667, subdivision (a) (which the court did not impose here), not to prior serious or violent felony convictions for purposes of the three strikes law.

---

[5] Earl does not argue his trial counsel provided ineffective assistance.

## DISPOSITION

The victim restitution order is reversed. The trial court is directed to hold a restitution hearing under section 1202.4, subdivision (f). The judgment is otherwise affirmed.


SEGAL, Acting P. J.


We concur:


FEUER, J.


WISE, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17