Filed 1/10/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D073360 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD272182) |
| CHAZ NASJHEE PRIDE, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed and remanded for further proceedings.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Laura Baggett, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Chaz Nasjhee Pride of robbery (Pen. Code, § 211; count 1)[1] and found true allegations he committed the robbery for the benefit of, or at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)).[2] In a bifurcated proceeding, Pride admitted two prior prison offenses (§§ 667.5, subd. (b), 668) and the court found true allegations Pride previously committed a strike offense (§§ 667, subds. (b)–(i), 668, 1170.12) and a serious felony prior (§§ 667.5, subd. (a), 668, 1192). The court sentenced Pride to 21 years in prison based upon six years for the robbery (double the midterm of three years) plus 10 years for the gang enhancement and five years for the serious felony prior. The court struck one of the prison prior allegations and stayed punishment on the second prison prior because it arose from the same conduct that resulted in the serious felony prior.

Pride contends his rights under the Fourth Amendment to the United States Constitution and the Electronic Communications Privacy Act (ECPA) (§ 1546, et seq.) were violated when a police detective viewed and saved a copy of a video Pride posted on a social media account shortly after the robbery depicting Pride wearing a chain taken in the robbery. Having reviewed the record in this case as well as the transcript of the in camera proceeding, we conclude there was no violation of Pride's rights.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] The jury acquitted Pride of the charge of being a felon in possession of ammunition (§ 3035, subd. (a)(1); count 2).

In supplemental briefing, however, the People concede the matter should be remanded for the court to consider whether to exercise its newly conferred discretion to strike the five-year serious felony enhancement pursuant to recently enacted amendments to sections 667 and 1385. Accordingly, we remand the matter for the limited purpose of allowing the trial court to consider whether to dismiss or strike the section 667, subdivision (a) enhancement and, if so, to resentence Pride accordingly. In all other respects, we affirm the judgment of conviction.

BACKGROUND

On the night of May 25, 2017, D.C. was robbed at the Imperial Avenue trolley stop near Petco Park. D.C. said he was visiting San Diego and became lost on the trolley system. He said he got off the trolley to take a taxi because he realized the trolley would not take him to his hotel. D.C. was wearing red Jordan shoes, a hat, a gold chain, and two watches.

D.C. spoke to some men who were looking for a party. D.C. invited them to his hotel and told them he was looking for marijuana. He followed the men into a parking lot where another group of men was standing. D.C. asked where he could get some marijuana. Someone yelled, "This is West Coast" and then took D.C.'s shoes, hat, iPad, money, watches, and chain.

After the assault, D.C. called 911 at 10:29 p.m. and reported he was robbed a few minutes earlier. He said he was jumped by a group of five males who took his iPad, shoes, money, and a credit card. He believed they were gang members.

3

The responding officer observed abrasions on D.C.'s left elbow and lacerations or abrasions to his forehead. D.C. also had marks on the side of his face which appeared consistent with someone kicking him. D.C. was not wearing shoes. He did not have a hat, a watch, or a chain.

D.C. reported a male with a scar along his jawline was among the individuals involved in the incident. D.C. identified Pride in court as the individual with the scar. According to D.C., Pride said, "This is West Coast" or "West Coast Crips" and the group jumped him. Pride took D.C.'s necklace. D.C. said the group also took his two gold watches, red shoes, $2,700 in cash, and an iPad.

Video surveillance at 9:50 p.m. showed D.C. wearing red shoes and a baseball hat. A few minutes later D.C. was seen talking with a group of males until approximately 10:05 p.m. when the group walked out of the camera view. Still photographs from the video showed D.C. wearing a watch and holding a tablet that resembled an iPad, which are consistent with D.C.'s description of items that were taken from him.

Approximately 20 minutes later, D.C. was seen walking into the surveillance video again and approaching a transit officer. D.C. was no longer wearing the shoes or watch and no longer had the tablet.

Based upon D.C.'s description of a person with a scar on his face who yelled, "This is West Coast," a gang unit detective thought the suspect could be Pride. The detective found a video Pride posted on a social media account shortly after the robbery depicting Pride wearing a gold chain around his neck saying, "Check out the new chain, dog."

4

The following day, D.C. looked at a photographic lineup. He thought two photographs looked like the person who robbed him. He said his "gut" told him the photograph of Pride was the person, but he could not see the scar in the photograph.

A detective showed D.C. a still photo taken from the video depicting only the chain, it did not show Pride's face because the detective did not want to influence the photographic lineup. D.C. confirmed it was his chain.

A few days later, officers executed a search warrant at Pride's residence where several items associated with the robbery of D.C. were recovered. A debit card with D.C.'s name on it was recovered on the top shelf of a closet in Pride's residence. The jacket Pride was wearing in the video was also recovered. When Pride was arrested, he was wearing D.C.'s gold chain.

## DISCUSSION

### I

Pride contends the court's admission of the video he posted on social media violated his rights under the Fourth Amendment and the ECPA because the detective obtained the video without a warrant by portraying himself as a friend to gain access to Pride's social media account. "In reviewing a motion to suppress evidence, we defer to the trial court's factual findings which are supported by substantial evidence and independently decide whether the facts of the challenged search and seizure conform to the constitutional standard of reasonableness. [Citation.] Where, as here, the facts are undisputed, we independently review the decision, applying federal law, as well as state law where it does not conflict with federal law, to evaluate the issues involved." (*People*

5

*v. Henderson* (1990) 220 Cal.App.3d 1632, 1642; *People v. Sandee* (2017) 15 Cal.App.5th 294, 300.)

A

We begin with a summary of the procedural history of the issue. In a trial brief, the People sought to introduce a copy of the video Pride posted on social media. The court stated the video would be allowed with proper foundation.

Before opening statements, defense counsel objected to the video contending Pride had an expectation of privacy in the message because the social media platform he used was intended for private messages, rather than messages open to the public. Counsel also argued the expectation of privacy was heightened because messages on the social media platform Pride used disappear after they have been viewed by intended recipients. Defense counsel contended the detective's recovery of the message violated the ECPA and sought to suppress the video under sections 1546.1 through 1546.4. The court distinguished the video in this case from the situation in *Carpenter v. United States* (2018) ___U.S.___ [138 S.Ct. 2206] (*Carpenter*) dealing with cell tower information identifying the location of a phone, which the United States Supreme Court was reviewing at the time of trial. The court also stated, based on the offers of proof, that the video was not illegally obtained and there is "no expectation of privacy" when one puts something out "into the ether."

In a hearing pursuant to Evidence Code section 1040, the gang detective testified he was assigned to monitor the West Coast Crips gang for over three years. He obtained evidence associated with Pride from a social media account. He asserted a privilege not

6

to disclose official information about the methods for obtaining the evidence because disclosure would be against the public interest. After hearing evidence from the detective in camera, the court determined there was a privilege related to some of the details of the investigation regarding how the video was obtained. The court determined defense counsel could inquire about whether the detective obtained access to the social media message by using a false name on an account. However, defense counsel could not inquire about the name on the account, any of the URL's or numbers associated with the account, or any other friends associated with the account.

The detective clarified during a subsequent 402 hearing that the detective did not log into or hack Pride's account to acquire the video. Rather, the detective logged in to an account, which was an account accepted by Pride as a "friend."

The court ruled there was "no authority for the proposition that false friends are not friends for purposes of—that there's a Fourth Amendment violation by representing yourself as a friend when you're not really all that friendly."

Before the jury, the detective testified he monitors gang members' social media activity almost daily. The detective identified Pride as one of the West Coast Crip gang members he monitors on social media platforms. When the detective heard the description of a Black male with a prominent scar on his jaw who said, "This is West Coast," the detective thought it was Pride. He was the only West Coast Crip gang member with a prominent scar on his jaw. The detective started checking Pride's social media accounts. The detective found a video Pride posted of himself with a chain in the early morning hours of May 26, 2017 on a social media account.

7

The video was played for the jury. It showed Pride wearing a chain resembling the one taken from D.C. and Pride said, "Oh, check out the new chain dog. Ya feel me? Ya feel me? All on this thang."

The detective agreed the social media platform Pride used sent messages only to friends on his account. The detective also acknowledged Pride did not send the video to the detective's account knowing he was a detective.

B

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The 'basic purpose of this Amendment,' …, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' " (*Carpenter, supra*, ___U.S. at p. ___ [138 S.Ct. at p. 2213].) "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' … official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." (*Id.* at p. ___ [138 S.Ct. at p. 2213].)

The Supreme Court of Delaware recently held there was no Fourth Amendment violation when an undercover officer posed as a false friend and obtained incriminating information from a social media page. "[T]he Fourth Amendment does not guard against the risk that the person from whom one accepts a 'friend request' and to whom one voluntary disclosed such information might turn out to be an undercover officer or a 'false friend.' One cannot reasonably believe that such 'false friends' will not disclose

8

incriminating statements or information to law enforcement—and acts under the risk that one such person might actually be an undercover government agent. And thus, one does not have a reasonable expectation of privacy in incriminating information shared with them because that is not an expectation that the United States Supreme Court has said that society is prepared to recognize as reasonable." (*Everett v. State* (Del. 2018) 186 A.3d 1224, 1236.)

Other states have similarly concluded there is no Fourth Amendment violation for police officers accessing social media posts through a cooperating witness who is a "friend" of the person disclosing the information. Where social media "privacy settings allow viewership of postings by 'friends,' the Government may access them through a cooperating witness who is a 'friend' without violating the Fourth Amendment." (*U.S. v. Meregildo* (S.D.N.Y. 2012) 883 F.Supp.2d 523, 526 citing *United States v. Barone* (2nd Cir. 1990) 913 F.2d 46, 49 [no legitimate privacy expectation in telephone calls recorded by the Government when at least one party on the call consents].) Although a defendant may believe his social media profile or account "would not be shared with law enforcement, he had no justifiable expectation that his 'friends' would keep his profile private. [Citation.] And the wider his circle of 'friends,' the more likely [the defendant's] posts would be viewed by someone he never expected to see them. [The defendant's] legitimate expectation of privacy ended when he disseminated posts to his 'friends' because those 'friends' were free to use the information however they wanted—including sharing it with the Government. [Citation.] When [the defendant] posted to his [social media] profile and then shared those posts with his 'friends,' he did so at his peril."

9

(*Meregildo,* at p. 526; see *Palmieri v. United States* (D.D.C. 2014) 72 F.Supp.3d 191, 210 [no reasonable expectation of privacy or Fourth Amendment violation when a social media user shared information with "friends"].)

These cases are consistent with long-standing United States Supreme Court precedent holding the Fourth Amendment affords no protection for voluntary communications with individuals who are secret government informers or agents. The Fourth Amendment does not protect " 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' " (*United States v. White* (1971) 401 U.S. 745, 749, citing *Hoffa v. United States* (1966) 385 U.S. 293, 302 [conversations with an unknown government informer do not implicate the Fourth Amendment]; *Lewis v. United States* (1966) 385 U.S. 206, 210 [no violation of Fourth Amendment for an undercover agent to enter a home at the invitation of the defendant to purchase narcotics the defendant offered for sale].)

The California Supreme Court applied similar principles in holding a recorded telephone call is admissible if one party consents to the recording. The court explained that even if the consenting party acted at the direction of the state, the accused is not a passive victim of government intrusion; "rather ... by taking a companion into his confidence, [the accused has] in essence extended his zone of privacy to embrace the companion as to any confidences so disclosed. There is simply no constitutional principle that prohibits the recipient of a confidence from breaching the trust reposed in him not to disclose it to others, including the police." (*People v. Phillips* (1985) 41 Cal.3d 29, 53.)

10

We conclude the same principles apply in this case. Pride voluntarily shared with his social media "friends" a video of himself wearing the chain stolen from D.C. The fact he chose a social media platform where posts disappear after a period of time did not raise his expectation of privacy. Rather, in posting the video message, Pride assumed the risk that the account for one of his "friends" could be an undercover profile for a police detective or that any other "friend" could save and share the information with government officials. As such, there is no Fourth Amendment violation.

C

Section 1546.1, subdivision (a) provides that, except as otherwise provided, a government entity shall not "(1) Compel the production of or access to electronic communication information from a service provider[; ¶] (2) Compel the production of or access to electronic device information from any person or entity other than the authorized possessor of the device[; or ¶] (3) Access electronic device information by means of physical interaction or electronic communication with the electronic device." However, section 1546.1, subdivision (a)(3) clarifies, "This section does not prohibit the intended recipient of an electronic communication from voluntarily disclosing electronic communication information concerning that communication to a government entity." Additionally, section 1546.1, subdivision (c)(4) states a government entity may access electronic device information by communicating with the device with "the specific consent of the authorized possessor of the device."

The ECPA has no application in this case because the government did not seek to compel access to Pride's electronic device or information on the device. Instead, Pride

11

voluntarily granted access to his social media account by "friends."  One such "friend" to whom he granted access was an undercover profile account for a police detective.  Pride voluntarily then posted a video of himself with incriminating evidence.  There was no violation of the ECPA and the court did not err in admitting the video.

II

Effective January 1, 2019, recent amendments to sections 667 and 1385 delete language prohibiting a judge from striking a prior serious felony conviction for purposes of eliminating a five-year sentence enhancement.  Instead, the court now may exercise discretion to strike a prior serious felony in the interest of justice.  (§§ 667, 1385 as amended by Stats. 2018, ch. 1013, § 2.)   The People concede the new law applies to Pride retroactively.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973 citing *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307–308 and *In re Estrada* (1965) 63 Cal.2d 740, 744–745.)  At trial, the court and counsel discussed the fact the court could not stay the five-year enhancement for the serious felony prior under the prior law.  Accordingly, we remand the matter for the trial court to consider whether to exercise its newly conferred discretion to strike Pride's serious felony prior conviction for purposes of sentence enhancement.

## DISPOSITION

The matter is remanded for the limited purpose of allowing the trial court to consider whether to dismiss or strike the section 667, subdivision (a) enhancement. If the court so exercises its discretion, it shall resentence Pride accordingly. In all other respects, the judgment of conviction is affirmed.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

HALLER, J.