Filed 4/11/25  P. v. Zuccolillo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C099761 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CF01824) |
| v. | |
| MICHAEL ANTHONY ZUCCOLILLO, | |
| Defendant and Appellant. | |

Defendant Michael Anthony Zuccolillo participated in a series of sexually explicit text messages with a fictitious minor.  The text messages were initiated by one of defendant's business associates, who invented the persona of a foreign-born 16-year old as part of a scheme to incriminate defendant to exact revenge for a deal gone wrong.  The business associate brought the messages to the attention of the Butte County Sheriff's Department, which commenced an investigation.  Members of the sheriff's department exchanged more messages with defendant, including sexually charged ones, using the

1

persona of the same fictitious 16 year old. They also sent suggestive photographs of the purported minor.

Defendant was arrested and charged with sending harmful matter to a minor (Pen. Code, § 288.2, subd. (a)(2)),[1] contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a)), and arranging a meeting with a minor for lewd purposes (§ 288.4, subd. (a)(1)). A jury found defendant guilty as charged. The trial court suspended imposition of sentence and placed defendant on formal probation for two years with various terms and conditions, including the requirement that he register as a sex offender.

Defendant appeals. He argues: (1) the sheriff's department engaged in outrageous government conduct by continuing an investigation conceived by a private citizen (his business associate); (2) the trial court should have suppressed evidence obtained pursuant to several search warrants; (3) the trial court erred in excluding evidence regarding his business associate's motives and criminal history; (4) the trial court violated his confrontation rights by admitting the text messages; and (5) the trial court violated his rights to due process and equal protection by requiring him to register as a sex offender. None of these arguments has merit. Accordingly, we will affirm.

## I. BACKGROUND

Sheriff's detective (now Sergeant) Jason Miller was a member of the Internet Crimes Against Children (ICAC) Task Force, which investigates and prosecutes crimes involving the online sexual exploitation of children. Miller met A. Halgren at the sheriff's office on February 24, 2020. Halgren gave Miller two cell phones. He also gave Miller permission to search the phones.

Miller examined the phones and found text messages to defendant from someone named "Mai." "Mai" described herself as a 32-year-old Chinese gymnast, living in

---

[1] Undesignated statutory references are to the Penal Code.

Sacramento. "Mai" and defendant exchanged text messages and photographs over several days. During the course of these communications, "Mai" told defendant she had a younger sister, "Kai." "Mai" introduced "Kai" to defendant by text.

*A.      Defendant's Communications with "Kai"*

Defendant received an initial text message from "Kai" on February 11, 2020. An exchange of messages ensued. The tone of the messages became increasingly suggestive, and soon covered such topics as defendant's vasectomy, "Kai's" virginity, and the possibility of the two having sex. Defendant and "Kai" also discussed their ages. "Kai" revealed that she was 16 years old, and defendant replied that he was 41.

Defendant was concerned about "Kai's" age. He wrote: "I might have an issue with you being under 18. It's a crime in America." "Kai" assured defendant: "I will have fun because it will feel good in my mouth," and "I am Chinese, and it is not bad for me." Despite defendant's reservations, he continued to exchange sexually explicit messages with "Kai." He also exchanged nude photographs with her. Things continued in this manner for a week or so.

On February 19, 2020, defendant wrote "Kai" that he would be passing through Sacramento that night and could get together if she was interested. The meeting was not to be, but "Kai" encouraged defendant to visit soon. The sexually charged and explicit back and forth continued. Around this time, "Kai" started using another phone.

On the afternoon of February 24, 2020, defendant texted "Kai" that he planned to be in Sacramento that night. After an hour or so, defendant, hearing nothing, sent another text message, this time just a question mark. A little less than an hour later, he wrote: "I'm finishing up. If I don't hear anything soon, I'm just going to turn back." A forensic analysis of call detail records from defendant's phone would later suggest that he left his home in Butte County around the same time, then drove towards Sacramento as far as Oroville, and then turned around and drove back. By then, of course, Halgren had turned "Kai's" phones over to the sheriff's department.

*B.     The Sheriff's Department Assumes the Role of "Kai"*

Sheriff's Detective Mary Barker began texting defendant as "Kai" on February 25, 2020, using yet another phone. Defendant told "Kai" he was frustrated the meeting had not happened the day before. Nevertheless, he soon resumed sending sexually explicit text messages and photographs. He also asked that "Kai" send more photographs. Sergeant Miller conducted a Google images search for photographs of young Asian women similar in appearance to the woman (or women) shown in the photographs previously sent by Halgren as "Kai." He found several such images on an adult porn site. Detective Barker sent the photographs to defendant, posing as "Kai."

*C.     The Search Warrants*

The sheriff's department obtained two search warrants for cell phone records: one for phones associated with defendant and Halgren for the period from January 1, 2020, through February 25, 2020, (the first warrant) and one for defendant's phone for the period from February 25, 2020, through March 1, 2020, (the second warrant). The sheriff's department later obtained a third search warrant for defendant's home, vehicles, and person. Detective Miller personally served the third warrant on defendant, simultaneously delivering copies of the first and second warrants. He seized and subsequently searched defendant's phone.[2]

*D.     Charges and Jury Trial*

Defendant was arrested and charged by first amended information with sending harmful matter to a minor (§ 288.2, subd. (a)(2)), contacting a minor with the intent to commit a sexual offense (§ 288.3, subd. (a)), and arranging a meeting with a minor for lewd purposes (§ 288.4, subd. (a)(1)).

---

[2] Defendant would later move to suppress the search warrants pursuant to the Fourth Amendment and the Electronic Communications and Privacy Act of 2016 (§ 1546 et seq.) (ECPA). (§§ 1538.5, 1546.4, subd. (a).) The trial court denied the motion.

4

The matter was tried to a jury in August 2023. Sergeant Miller testified for the prosecution. Defendant testified on his own behalf. He said he never believed he was texting with a 16-year-old girl—or even a 32-year-old gymnast. Instead, defendant thought he was texting with his wife or one of several friends. It was not unusual for defendant to exchange sexually charged messages with these people, and the messages often involved role-playing. However, defendant never thought he was sending sexually charged messages to a 16 year old and does not have any sexual interest in minors.

E.     *Verdict and Sentence*

The jury deliberated for two days and found defendant guilty as charged. Defendant appeared for sentencing in October 2023. The trial court suspended imposition of sentence and placed defendant on formal probation for two years and ordered him to register as a sex offender pursuant to section 290. This appeal timely followed.

## II.  DISCUSSION

A.     *Outrageous Government Conduct*

Defendant argues for the first time on appeal that the sheriff's department engaged in unconstitutional "outrageous government conduct" by violating operational and investigative standards set by the ICAC Task Force (hereinafter, ICAC standards). The argument fails.

1.     *Additional Background*

Sergeant Miller testified on direct examination about the circumstances giving rise to the sheriff's department's investigation, which began with the meeting with Halgren. Defendant's trial counsel organized part of his cross-examination around the ICAC standards. He elicited testimony that the ICAC standards—which do not appear to have been made part of our record—require that only sworn law enforcement personnel conduct investigations, and Halgren was not part of law enforcement. He also elicited testimony that the ICAC standards place restrictions on transmitting visual depictions of

5

persons or purported persons, including that the person be " 'an investigative personnel person,' " over the age of 18, who consents to the use of the depiction. Miller acknowledged that Halgren transmitted images of Asian women that may or may not have been over the age of 18, and Detective Barker transmitted images obtained from an adult website. On redirect, Miller clarified that the ICAC standards are merely guidelines and are not mandatory.

Defense counsel alluded to the ICAC standards in closing argument, noting they are designed to guide law enforcement personnel in conducting "real investigations," and do not contemplate vigilante undertakings by private citizens. However, defense counsel did not argue the sheriff's department engaged in "outrageous government conduct." More importantly, our record does not contain anything indicating defendant ever moved to dismiss for outrageous conduct.

2.      *Analysis*

The United States Supreme Court has held that a trial court may dismiss a criminal case based on outrageous government conduct, defined broadly as "conduct that shocks the conscience." (*Rochin v. California* (1952) 342 U.S. 165, 172.) Our high court has "left open the possibility that we might accept the outrageous conduct defense," but has not formally adopted it. (*People v. Smith* (2003) 31 Cal.4th 1207, 1224.) Nevertheless, courts of appeal have concluded that the defense may apply where the police manufacture a crime, engage in criminal activity, or act solely out of the desire to convict the defendant. (*People v. Wesley* (1990) 224 Cal.App.3d 1130, 1144; see also *People v. Guillen* (2014) 227 Cal.App.4th 934, 1005-1006.) For outrageous government conduct to lead to a finding that conviction would violate the defendant's right to due process, the conduct must be " ' "so grossly shocking and so outrageous as to violate the universal sense of justice." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 418, fn. 17.)

Some courts have held that rulings on motions to dismiss for outrageous conduct should be reviewed for abuse of discretion. (*People v. Velasco-Palacios* (2015) 235

6

Cal.App.4th 439, 445-446; *People v. Shrier* (2010) 190 Cal.App.4th 400, 418.) Others have reasoned that the analysis is a mixed question of law and fact. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 855-858.) Under the latter approach, the appellate court first assesses the facts to determine whether misconduct occurred. (*Ibid*.) "This factual determination is clearly one that is subject to a deferential standard of review." (*Id.* at p. 858.) The court then applies the law to the established facts de novo to determine whether the conduct constitutes outrageous conduct in the constitutional sense. (*Ibid.*) We need not resolve this split of authority, because we conclude the issue has been forfeited.

"To preserve a misconduct claim for review on appeal, a defendant must make a timely objection." (*People v. Davis* (2009) 46 Cal.4th 539, 612; see *People v. Gamache* (2010) 48 Cal.4th 347, 370-371.) Here, though defense counsel referred to possible violations of the ICAC standards at various points, he did not argue the sheriff's department engaged in outrageous conduct and does not appear to have moved to dismiss on that ground. Thus, the trial court was never called upon to decide whether the sheriff's department engaged in any misconduct at all, let alone conduct " ' "so grossly shocking and so outrageous as to violate the universal sense of justice." ' " (*People v. Maury, supra*, 30 Cal.4th at p. 418, fn. 17.) The claim is therefore forfeited. (*People v. Low* (2010) 49 Cal.4th 372, 393, fn. 11 [due process challenge based on claim of outrageous government conduct forfeited where not raised at trial].)

B.     *Search Warrants*

Defendant next challenges the validity of the search warrants. He argues the first and second warrants were overbroad within the meaning of the Fourth Amendment and section 1546.1, subdivision (d)(2) of the ECPA and failed to comply with the notice

requirements mandated by section 1546.1, subdivision (a) of the ECPA.[3]  We will address these contentions momentarily.

*1.      Additional Background*

The sheriff's department obtained several search warrants over the course of the investigation, three (or maybe only two) of which are relevant here.[4]  The first warrant (21-SW-00479) was issued and executed on service providers for phones associated with defendant and Halgren on February 25, 2020.  The first warrant sought phone records for defendant's and Halgren's phones for the period from January 1, 2020, through February 25, 2020.

The second warrant (21-SW-00494) was issued and executed on defendant's cell phone provider on March 10, 2020.  The second warrant sought defendant's phone records for the period from February 25, 2020, through March 1, 2020.

The third warrant (BSW-20-144) was issued and executed on defendant on April 9, 2020.  The third warrant authorized searches of defendant's residence, vehicles, and person for electronic data processing and storage devices and images or videos of minors under the age of 18.  Detective Miller personally served the third warrant on defendant on April 9, 2020.  He simultaneously gave defendant copies of the first and second warrants.

Defendant moved to suppress evidence obtained from Halgren's phones and each of the search warrants pursuant to the Fourth Amendment and the ECPA.  (§§ 1538.5, 1546.4, subd. (a).)  As relevant here, defendant argued the sheriff's department needed a warrant to search Halgren's phones, as Halgren was not the intended recipient of defendant's messages.  Turning to the search warrants, defendant argued the first and

---

[3]  As we will elaborate, defendant's opening brief touches on other arguments, but these arguments are not clearly set out in a heading or supported by reasoned legal argument, and therefore, we will treat them as forfeited.

[4]  A fourth search warrant was issued but never executed.

second warrants were overbroad and failed to comply with the ECPA's notice requirements. Defendant argued the sheriff's department exceeded the scope of the third warrant by downloading the contents of his phone without obtaining a separate warrant describing the items to be searched on the phone. The prosecution opposed the motion.

The trial court held a hearing, at which Detective Miller testified. Following the hearing, the trial court denied the motion. The trial court began with evidence obtained from Halgren's phones. Relying on *People v. Pride* (2019) 31 Cal.App.5th 133, 140 (*Pride*), the trial court found defendant did not have a reasonable expectation of privacy in his communications with Halgren. The trial court then considered the search warrants, finding each warrant was supported by probable cause and each was sufficiently particular. As for the ECPA's notice requirements, the trial court agreed with defendant that the sheriff's department failed to give notice of the first and second warrants but concluded the purpose of the statute was nevertheless met and suppression was not warranted.

### 2. *Applicable Legal Principles and Standard of Review*

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) "A search is presumptively reasonable, and thus in compliance with the Fourth Amendment, if supported by a warrant describing with particularity the thing or the place to be searched." (*People v. Meza* (2023) 90 Cal.App.5th 520, 534 (*Meza*).)

Courts consider "three main factors" in determining the validity of a warrant: (1) probable cause, (2) particularity, and (3) overbreadth. (*Meza*, *supra*, 90 Cal.App.5th at p. 535.) Probable cause will be found where there is " ' "a substantial basis for concluding a fair probability exist[s] that a search would uncover wrongdoing." ' " (*Ibid.*)

9

" 'Particularity is the requirement that the warrant must clearly state what is sought,' " and overbreadth addresses whether " 'the scope of the warrant [is] limited by the probable cause on which the warrant is based.' " (*Ibid.*) Defendant concedes each of the executed warrants was supported by probable cause. Therefore, we need only address particularity and overbreadth, at least so far as the Fourth Amendment is concerned.

But we also have statutory requirements to consider. As relevant here, the ECPA now requires that any warrant to compel production of electronic communications information or electronic device information from a service provider must "describe with particularity the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought." (§ 1546.1, subd. (d)(1).)[5] The ECPA also requires that law enforcement provide notice of the warrant to the target "contemporaneously with the execution of a warrant." (§ 1546.2, subd. (a)(1).)

A person whose electronic information has been obtained or retained in violation of the ECPA "may move to suppress" pursuant to section 1538.5. (§1546.4, subd. (a).) The same standard of review applies. (*Ibid.*) Thus, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence. (*DiMaggio v. Superior Court* (2024) 104 Cal.App.5th 875, 889.) We exercise our independent

---

[5] Defendant argues without citation to authority that the ECPA requires greater particularity than the Fourth Amendment. We are not so sure. True, the ECPA calls for particularized descriptions of enumerated categories of information, such as the "time periods covered, the target individuals or accounts." (§ 1546.1, subd. (d)(1).) But the statute only requires such descriptions "as appropriate and reasonable." (*Ibid*.) "Thus, not every warrant for electronic information must describe the information it seeks in terms of each of the four categories of information listed in the statute." (*Price v. Superior Court of Riverside County* (2023) 93 Cal.App.5th 13, 53.) Regardless, defendant fails to support the argument with legal authority or analysis, and we decline to consider the issue further. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37.)

judgment in determining whether, on the facts presented, the search or seizure was reasonable.  (*Ibid.*)

### 3.    *Analysis*

Determining the nature of defendant's challenge to the search warrants is easier said than done.  Defendant's opening brief purports to challenge all three executed warrants as overbroad or insufficiently particular, but he makes no real effort to distinguish between them.  Instead, he indiscriminately asserts all search warrants were overbroad as to time, or overbroad as to types of records sought, or both.  He likewise suggests none of the warrants complied with the ECPA's notice requirements, despite their obvious differences.  Defendant paints with too broad a brush.

" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)  "Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review."  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)  An appellant must "convince us, by developing his arguments, stating the law, and calling out relevant portions of the record, that the trial court committed reversible error," and the failure to do so justifies us in rejecting the appellant's arguments on this basis alone.  (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.)

We do not believe any of defendant's search warrant arguments are adequately supported or developed, and we would be justified in deeming them all forfeited.  (*Bishop v. The Bishop's School, supra,* 86 Cal.App.5th at p. 910.)  Nevertheless, we will exercise

our discretion to briefly address defendant's primary arguments to the extent we can discern them.[6]

### a. Overbreadth and Particularity

Defendant suggests all the search warrants were overbroad or insufficiently particular in one way or another. He suggests the first warrant was overbroad in seeking phone records for an eight-week period from January 1, 2020, to February 25, 2020, when he only communicated with Halgren as "Kai" for a three-week period, from February 5, 2020, through February 25, 2020. He suggests the second warrant was overbroad in seeking phone records reflecting communications with persons other than the sheriff's department posing as "Kai." And he suggests the third warrant—or possibly all the warrants—were insufficiently particular in using the phrase "any and all" to describe categories of records to be seized. We need not reach any of defendant's overbreadth or particularity arguments, because they are all aimed "at categories of potential evidence which were not used at trial." (*People v. Ulloa* (2002) 101 Cal.App.4th 1000, 1006-1007 (*Ulloa*).)

"Even when a warrant is overbroad in part, evidence will not be suppressed if it was seized pursuant to a portion of the warrant which was not." (*People v. Holmsen*

---

[6] We decline to consider two other issues suggested by the opening brief. First, we decline to consider defendant's suggestion that the trial court's reliance on *Pride* was misplaced. *Pride* was only relevant to the question whether defendant had a reasonable expectation of privacy in his communications with Halgren. (See *Pride, supra,* 31 Cal.App.5th at p. 140.) And that question was only relevant to the admission of evidence obtained from the warrantless search of Halgren's phones, which defendant does not purport to challenge. Thus, we have no occasion to consider whether defendant had a reasonable expectation of privacy in communications captured on Halgren's phones, or whether *Pride* supports the trial court's determination that he did not.

Second, we decline to consider defendant's suggestion that the Fourth Amendment or the ECPA required the sheriff's department to obtain another search warrant to search devices seized pursuant to the third warrant. Defendant offers no legal analysis or authority for this proposition, and we decline to develop the argument for him.

(1985) 173 Cal.App.3d 1045, 1048, italics omitted; see also *People v. Camarella* (1991) 54 Cal.3d 592, 607, fn. 7.) And where evidence was seized under "some provision of the warrant [that] was overbroad," there is no resulting error unless that same evidence was introduced at trial. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1043; *Ulloa, supra,* 101 Cal.App.4th at pp. 1005-1006.)

*Ulloa* illustrates the point. There, the defendant was charged with multiple acts of oral copulation and sodomy against a minor neighbor. (*Ulloa, supra*, 101 Cal.App.4th at p. 1003.) Police obtained a warrant to search the defendant's home and any computers for evidence of the exploitation of children, including videos or photographs depicting actual or simulated sexual acts. (*Id.* at p. 1004.) The officer's supporting affidavit indicated that defendant had been communicating with the minor through an instant messaging service. (*Id.* at pp. 1004 1006.) Police seized the defendant's computer and found the instant messages, along with photographs that may or may not have depicted actual or simulated sex acts, but do not appear to have involved the minor. (*Id.* at p. 1005.) At trial, the prosecution introduced the messages, but not the photographs. (*Id.* at p. 1006.) A jury found the defendant guilty of one count of oral copulation with a person under 18. (*Id.* at p. 1003.)

The defendant appealed, arguing the search warrant was constitutionally overbroad in seeking photographs and videos. (*Ulloa, supra*, 101 Cal.App.4th at p. 1004.) The Court of Appeal rejected the defendant's overbreadth argument, stating: "None of the photographs seized were introduced against him at trial. Thus, even if the descriptions of items [sought by the warrant] were overbroad, the photographs seized pursuant to those descriptions were not used, and there was no resulting trial error." (*Id.* at pp. 1005-1006.) So too here.

Take the first warrant. Defendant concedes the first warrant authorized the search of his phone records for the three weeks in which he actively communicated with "Kai" and "Mai," from February 5, 2020, through February 25, 2020. But he says the warrant

13

went too far in authorizing the phone records search for the four preceding weeks, from January 1, 2020, through February 4, 2020. He thus claims the seizure of phone records for the period from January 1, 2020, through February 4, 2020, was beyond the permissible scope of the first warrant and should have been suppressed. Defendant's argument is ultimately academic, as he does not identify any evidence from that earlier period that was admitted at trial. "Accordingly, even if we assume some provision of the warrant was overbroad, defendant has not shown that any evidence should have been suppressed." (*People v. Carpenter, supra*, 21 Cal.4th at pp. 1043-1044.)

Defendant's challenge to the second and third warrants fail for much the same reason. Defendant argues the second warrant was overbroad in seeking evidence of communications with persons other than the sheriff's department posing as "Kai." He argues the third warrant was overbroad in seeking "any and all" phone records in various categories. However, he does not identify any evidence seized pursuant to the purportedly overbroad provisions of the warrants that was admitted at trial. Thus, even assuming the second and third warrants were overbroad as to subject matter, defendant has again failed to show that any evidence should have suppressed. (*People v. Carpenter, supra*, 21 Cal.4th at pp. 1043-1044; *Ulloa, supra*, 101 Cal.App.4th at pp. 1005-1006.) Defendant's challenge to the scope of the search warrants fails.

b.      Notice

Defendant next argues suppression was required because the sheriff's department failed to give contemporaneous notice of the first and second warrants pursuant to section 1546.2, subdivision (a)(1) of the ECPA. The People concede the violation of the ECPA's notice requirements, but argue suppression was not warranted. The People have the better argument.

California appellate courts have applied a three-part inquiry determining whether an ECPA violation warrants suppression. (*Price v. Superior Court of Riverside County, supra*, 93 Cal.App.5th at p. 61; *People v. Campos* (2024) 98 Cal.App.5th 1281, 1297

14

(*Campos*).) Adapted from *People v. Jackson* (2005) 129 Cal.App.4th 129 (*Jackson*), a wiretap case, the "*Jackson* framework" asks: "(1) Has defendant established a violation of [the ECPA]? (2) If so, was the violated provision intended to play a central role in the statutory scheme? And (3) if so, was the purpose of the provision achieved in spite of the error?" (*Campos, supra,* at p. 1297, citing *Jackson, supra,* at p. 149.) The trial court answered each of these questions in the affirmative.

With respect to the last *Jackson* inquiry, the trial court found defendant received notice of the first and second warrants on April 9, 2020, when Detective Miller personally served the third warrant on him. The trial court further found that the court would been likely to have granted applications to delay notification of the first and second warrants, had such applications been made. (See § 1546.2, subd. (b)(1)-(2).) That being so, the trial court found the purpose of the notice requirement had been achieved, despite the delayed notification. We agree with the trial court.

Defendant received notice of the first and second warrants on April 9, 2020, more than three years before trial began. "And since law enforcement's efforts to obtain defendant's electronic information were eventually made known to him before trial began, we cannot say the violations defeated [the ECPA's] purpose." (*Campos, supra*, 98 Cal.App.5th at p. 1298 [notice violation was harmless error where defendant received notice before trial began].) Consequently, suppression was not warranted under the *Jackson* framework.

C.     *Halgren's Motives*

Defendant argues the trial court erred in granting a prosecution motion to limit Halgren's testimony. He argues the trial court's ruling deprived him of an opportunity to attack the credibility of the investigation and violated his right to due process and to present a defense. Defendant's argument fails.

*1. Additional Background*

The prosecution filed a pretrial motion to limit Halgren's testimony. The prosecution anticipated Halgren would be asked about his reasons for communicating with defendant as "Kai," and would say he was angry with defendant because he felt he'd been wronged in a real estate deal. The prosecution argued Halgren's feelings about defendant and the real estate deal were irrelevant (Evid. Code, § 350), and the probative value of such evidence would be outweighed by the danger of confusing the issues, misleading the jury, and wasting time (Evid. Code, § 352). Defendant opposed the motion, arguing Halgren initiated the investigation, and "[i]t's always the right of the defense to attack the manner in which an investigation occurred and how the investigation was pursued."

The trial court ruled from the bench, stating: "So as it relates to Mr. Halgren and his testimony, which is reflected in the People's motion, we'll take up Mr. Halgren if called as a witness in a 402 hearing prior to that. And I will need to hear how his feelings toward the defendant and how this real estate deal are relevant at that time prior to his testimony. [¶] So I'm granting the motion as it relates to Mr. Halgren's testimony that counsel refrain from discussing his feelings towards the defendant and a harmful real estate deal between he and the defendant until he testifies. [¶] Now, as to how the investigation occurred, the manner in which the investigation occurred, I think I'm going to have to take those issues up as they come. As far as if there's hearsay testimony being inquired about, I'll have to hear and rule on those motions as they come along. [¶] So I'll defer ruling until those issues are presented."

Halgren was not called as a witness by either side, and that was the end of the matter.

*2. Analysis*

"A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have,

but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself. [Citations.] ' " 'Where the court rejects evidence temporarily or withholds a decision as to its admissibility, the party desiring to introduce the evidence should renew his offer, or call the court's attention to the fact that a definite decision is desired.' " ' " (*People v. Holloway* (2004) 33 Cal.4th 96, 133; *People v. Ennis* (2010) 190 Cal.App.4th 721, 735-736.)

Here, the trial court provisionally granted the motion in limine but made clear that it would reconsider its ruling in light of Halgren's testimony. Accordingly, it was defense counsel's obligation to renew his request that the evidence be admitted and press for a final ruling after Halgren testified in order to preserve the issue for appeal. (*People v. Holloway, supra*, 33 Cal.4th at p. 133.) None of these things happened. Halgren did not testify, and defense counsel did not make a further offer of proof or press for a final ruling in the changed context of the trial evidence. Consequently, the issue has been forfeited. (*People v. Ennis, supra*, 190 Cal.App.4th at pp. 735-736.)

D.      *Halgren's Text Messages*

Defendant next argues the trial court erred in admitting Halgren's text messages. He argues the text messages were testimonial hearsay, and their admission violated the confrontation clause. The People respond that defendant forfeited his confrontation clause challenges by failing to object in the trial court. We agree with the People.

Even claims based on the confrontation clause are forfeited on appeal if that objection was not raised at trial. (See *People v. Redd* (2010) 48 Cal.4th 691, 730.) Defendant did not object to the text messages on confrontation clause grounds and thereby forfeited the issue. But even if the argument had been preserved, it lacks merit.

It is well established that out-of-court statements, when offered to show the effect on the hearer, are admissible as nonhearsay. (See *People v. Jablonski* (2006) 37 Cal.4th 774, 820-821 [a victim's statement later communicated to the defendant that she was afraid of the defendant was admissible to show, not that she was actually afraid, but the

17

statement's effect on the defendant]; *People v. Boyette* (2002) 29 Cal.4th 381, 428-429 [testimony by defendant's mother that she had been threatened was not hearsay because it was not offered to prove the mother was actually threatened but for the purpose of showing the effect on the defendant who had learned of the threats].) Here, Halgren's text messages were offered to show that defendant believed he was communicating with a 16-year-old girl who was interested in having a sexual relationship with him. They were not offered for the truth of the matter asserted; therefore, they were not testimonial hearsay subject to the confrontation clause.

E.      *Equal Protection*

Finally, defendant challenges the probation condition requiring lifetime sex offender registration pursuant to section 290. He argues mandatory lifetime registration violates his equal protection rights under the federal and state Constitutions, as section 290 imposes shorter registration periods for other sex offenses, without a rational basis for doing so.[7] We are not persuaded.

1.      *Standard of Review*

Where no suspect class or fundamental right is in play, we analyze equal protection claims with rational basis review. (*People v. Briscoe* (2024) 105 Cal.App.5th 479, 487.) Defendant has the burden to show the classification he challenges fails this "deferential standard." (*People v. Hardin* (2024) 15 Cal.5th 834, 852.) We analyze his claims de novo. (*Briscoe, supra*, at p. 487.)

"Rational basis review requires that the challenged classification bear a rational relationship to a legitimate state purpose. [Citation.] The logic does not need to be persuasive or sensible—just rationale. [Citation.] It 'need not have been "ever actually

---

[7] Defendant's argument heading refers to due process and equal protection, but the argument focuses solely on equal protection. Accordingly, we consider any due process claim abandoned.

18

articulated" by lawmakers, nor be "empirically substantiated." ' [Citation.] The law will be upheld as long as we can ' " 'speculat[e]' any rational reason" ' for the distinction it draws. [Citation.] This means that '[t]o mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might support the disputed statutory disparity.' " (*People v. Briscoe, supra*, 105 Cal.App.5th at p. 487.)

   2.    *Relevant Offenses and Sex Offender Registration Requirements*

California law has long required persons convicted of certain sex crimes to register as sex offenders. (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048.) "For many years, California took a one-size-fits-all approach to sex offender registration: If registration was required, registration was always for life." (*People v. Franco* (2024) 99 Cal.App.5th 184, 190.) Consistent with this approach, section 290 imposed automatic lifetime registration for certain sex offense convictions. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 876-877.) Effective January 2021, however, the Legislature amended section 290 and established a three-tiered registry for adult sex offenders, requiring registration for a minimum of 10 years (tier one), 20 years (tier two), or for life (tier three), depending on the offense. (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 509.)

Defendant was convicted of three sex offenses: sending harmful matter to a minor (§ 288.2, subd. (a)(2)), contacting or communicating with a minor with intent to commit a sexual offense (§ 288.3, subd. (a)), and arranging a meeting with a minor with intent to commit a sexual offense (§ 288.4(a)(1)). These are all tier three offenses requiring lifetime registration. (§ 290, subd. (d)(3)(C)(x) - (xii).)

   3.    *Analysis*

Defendant argues lifetime registration for convictions under sections 288.2, 288.3 and 288.4 violates equal protection. This is so, defendant says, because violations of sections 288.2, 288.3 and 288.4 are "less serious" than other offenses, for which lifetime registration is not required. For example, defendant says rape with a foreign object (§

19

264.1), aggravated sexual assault of a child (§ 269), and sodomy (§ 286), where the offenses are not serious or violent within the meaning of section 667.5, subdivision (c) or 1192.7 subdivision (c), are all tier one offenses, requiring only a 10-year registration period. Defendant's argument fails.

For starters, rape with a foreign object and aggravated sexual assault of a child are both tier three offenses, as the People accurately observe. (§ 290, subds. (d)(3)(M) [requiring tier three registration for persons convicted of violating § 264.1] and (d)(3)(C)(viii) [requiring tier three registration for persons convicted of violating § 269].) Regardless, a plausible basis exists to mandate lifetime registration for persons who violate sections 288.2, 288.3, and 288.4, while imposing a lesser registration period for sodomy.

The Legislature could have reasonably believed offenders under sections 288.2, 288.3 or 288.4, pose a greater risk of recidivism than other sex offenders, such as section 286 offenders. The offenses proscribed by these statutes are all "luring" crimes, which involve an adult planning and cultivating a relationship with a targeted minor, often by means of electronic communications. (See *People v. Hsu* (2000) 82 Cal.App.4th 976, 985 [§ 288.2]; *People v. Keister* (2011) 198 Cal.App.4th 442, 452 [§ 288.3]; *People v. Yuksel* (2012) 207 Cal.App.4th 850, 854 [§ 288.4].) The Legislature could have reasonably concluded that such offenses evince a predatory mindset, which goes beyond the mindset required for offenses under section 286, which might be more impulsive. (*See, e.g., People v. Medelez* (2016) 2 Cal.App.5th 659, 663 [luring requires preparatory communication].) The Legislature could have also concluded the planning associated with such offenses betokens a higher risk of reoffending, such that lifetime registration would be appropriate. Indeed, the Legislature, in enacting the tiered registry system, relied on " 'decades of research' " which provided " 'a much better sense of who is at high risk of reoffending and who is not.' " (Sen. Rules Com., Off. of Sen. Floor

20

Analyses, 3d reading analysis of Sen. Bill No. 384 (2017-2018 Reg. Sess.) as amended Sept. 8, 2017, p. 13.)

Thus, we conclude the disparate treatment of offenders under sections 288.2, 288.3, and 288.4 bears a rational relationship to the purpose of the tiered registry system—focusing resources and attention on offenders at the highest risk to reoffend—and to the purposes of those statutes, which were intended to address concerns about sex offenders, including predatory adults using electronic communications to lure children for sex.  Defendant's equal protection claims fail.

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

EARL, P. J.

/S/

_____

DUARTE, J.